IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JAMES ROBERT JILES, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 5:12-CV-180 (CAR) |
| PNC BANK NATIONAL | : | |
| ASSOCIATION, as successor in | : | |
| interest to National City Mortgage and | : | |
| PNC Mortgage; JOHN AND OR JANE | : | |
| DOES, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant PNC Bank National Association's, as successor in interest to National City Mortgage and PNC Mortgage, ("PNC") Motion to Dismiss [Doc. 4]. PNC argues that Plaintiff James Robert Jiles, Jr.'s Complaint, containing five counts, should be dismissed in its entirety. Having considered the matter and the applicable law, the Court concludes that Plaintiff's Complaint fails to state a claim upon which relief may be granted. Accordingly, Defendant PNC's Motion to Dismiss [Doc. 4] is **GRANTED**.

## LEGAL STANDARD

1

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).  To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.  Bell Atlantic Corp., 550 U.S. at 556, 127 S. Ct. at 1965.

## BACKGROUND

On July 26, 2007, Plaintiff James Robert Jiles, Jr., received title to 671 Springdale Woods Drive, Macon, Georgia, 31210 (the "Property").  That same day, Plaintiff executed a Security Deed in favor of The Mortgage Center Group LLC (the "Group").  On July 31, 2007, the Group assigned and recorded the mortgage and note to National City Mortgage ("National City").  Plaintiff made payments to National City until

sometime in 2009 following PNC's merger with National City.[1]  At that point, PNC became National City's successor in interest, and Plaintiff began to make timely monthly mortgage payments to PNC.

Before making his February 2011 payment, an unalleged individual(s) "led Plaintiff to believe" that if he submitted the requisite loan modification documents and defaulted on his loan payments, then his mortgage would be modified.[2]  [Doc. 1.2, ¶ 13].  That month, despite the fact that Plaintiff still owed money on the loan, Plaintiff made his last payment and submitted loan modification documents to PNC.

In July of 2011, Plaintiff began receiving several contradictory correspondences from PNC and McCalla Raymer LLC ("McCalla), the law firm that represented PNC: July 27, 2011: a PNC loan workout specialist stated that a repayment agreement had been reached; November 23, 2011: McCalla attorney discussed approval for a special repayment program; December 16, 2011: Plaintiff received a notice of foreclosure with

---

[1] Attached as an exhibit to its Motion is PNC's Form 10-K from the 2009 fiscal year to support its assertion that it is a successor by merger of National City.  A district court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).  Undisputed means that "the authenticity of the document is not challenged."  Id.  Here, the document is central to Plaintiff's allegation that he is "unsure" as to who is the holder of the note and deed.  [Doc. 1-2, ¶ 33].  Additionally, in his Response, Plaintiff does not dispute the authenticity of PNC's exhibit and admits the document's content.  Accordingly, the Court will accept Defendant's exhibit and the statements therein as authentic and undisputed for purposes of the instant Motion.

[2] Although Plaintiff significantly substantiates this allegation (as well as several others) in his Response Brief, the Court can only consider those allegations contained in Plaintiff's Complaint.

3

a foreclosure date scheduled for February 7, 2012, from McCalla; January 3, 2012:

McCalla informed Plaintiff he was not approved for a Loss Mitigation workout

because he did not return the necessary documents (Plaintiff alleges that he produced

the documents); January 23, 2012: PNC sent Plaintiff information about the Home

Affordable Foreclosure Alternative Program ("HAFA"); January 31, 2012: PNC

reinforced its "commitment to help [Plaintiff] regarding his request for hardship

assistance" [Doc. 1.2, ¶22]; February 28, 2012: PNC requested additional information

to continue its review of Plaintiff's need for hardship assistance; March 28, 2012:

Plaintiff received his second foreclosure notice from McCalla setting the date of

foreclosure for May 1, 2012, and discussing an "Initial Communication Letter"

regarding "Borrowers Rights" that Plaintiff never received; and April 3, 2012: PNC

sent Plaintiff more information about HAFA.

On April 20, 2012, Plaintiff filed his complaint in the Superior Court of Bibb

County, Georgia, styled, "Petition to Establish Title, Declaratory Action to Determine

Actual Holder of Mortgage upon Property and Complaint for Other Relief." [Doc.

1.2]. Therein, Plaintiff asserts five causes of action against PNC: 1) wrongful

foreclosure; 2) intentional infliction of emotional distress; 3) misrepresentation and

fraud; 4) negligence; and 5) equity/temporary injunction. On April 25, 2012, Plaintiff

submitted his unopposed entry for a temporary restraining order and enjoined

foreclosure of the Property until May 30.   On May 3, 2012, PNC waived service of summons, and on May 18, PNC removed the instant action to this Court.

## DISCUSSION

1. <u>Wrongful Foreclosure</u>

Plaintiff first alleges that PNC is liable for attempting to wrongfully foreclose on the Property, in violation of O.C.G.A. § 44-14-162, <u>et seq</u>.[3]  In his Complaint Plaintiff states that he is "unsure of the actual holder of the security deed" and that PNC does not have standing to foreclose on the Property.  [Doc. 1.2 ¶ 34].  In regards to Plaintiff's first allegation, Plaintiff admits the contents of PNC's Form 10-K in his Response Brief and thus admits that PNC is the proper party to foreclose on the Property.  Thus, Plaintiff appears to concede any argument that PNC is not the holder.

The Court can only decipher one remaining wrongful foreclosure claim from the basis of the Complaint—that PNC's interest was unassigned and thus PNC is not a *secured* holder of the note.  Under Georgia law, a successor by merger receives vested title to real estate "without further act or deed, and without any conveyance, transfer, or assigned having occurred."  O.C.G.A. § 14-2-1106.  Thus, because PNC is National City's successor by merger, PNC was not required to record its assignment.

---

[3] Section 44-14-162, <u>et seq</u>., govern non-judicial foreclosures.  To establish a claim for wrongful foreclosure, a plaintiff must "establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." <u>Nicholson v. OneWest Bank</u>, No. 1:10-CV-0795, 2010 WL 2732325, at *3 (N.D. Ga. Apr. 20, 2010).

Accordingly, the Court concludes that PNC is the secured holder of the note and deed, and thus PNC has authority to foreclose on the Property, if Plaintiff is in default.  See Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004) (breach of legal duty element in wrongful foreclosure claim includes foreclosing on property when party is not in default).

In his Response, Plaintiff argues he does not allege that he was in default. While the Complaint may not use those exact terms, the facts are clear: "Plaintiff's last monthly payment to PNC was in February of 2011," and Plaintiff does not allege that he made another payment.  [Doc. 1.2, ¶ 10].  To the extent that Plaintiff alleges that a modification agreement was formed and presumably changed the terms of his loan, Defendant asserts that the alleged modification agreement lacked consideration and violates the Statute of Frauds.

Under Georgia law, "[a]n agreement on the part of one to do what he is already legally bound to do is not sufficient consideration for the promise of another." Citizens Trust Bank v. White, 274 Ga. App. 508, 511, 618 S.E.2d 9, 11-12 (Ga. App. 2005).  This proposition has been consistently applied in the context of mortgage payments.  See Adams v. JPMorgan Chase Bank, No. 1:10-CV-04226-RWS, 2011 WL 2532925, at *2 (N.D. Ga. June 24, 2011) (holding that a signed special forbearance agreement lacked consideration because of plaintiff's existing legal obligation to

6

comply with the terms of the mortgage); <u>White</u>, 274 Ga. App. at 511, 618 S.E.2d at 11-12 (holding that an agreement to pay a sum less than amount owed to bank to not foreclose on property was inadequate consideration because it was for "payment of a debt that [the mortgagor] already owed").

Here, even when reading Plaintiff's allegations liberally, the alleged modification agreement, at the very least, would permit Plaintiff to make a payment on an amount already owed to PNC.  Plaintiff does not allege any new consideration for this agreement in his Complaint.  Accordingly, Plaintiff's alleged modification agreement is insufficient under Georgia law to advance his claim that he was not in default.  In light of this conclusion, the Court need not address PNC's remaining Statute of Frauds argument.  Thus, Plaintiff's Complaint fails to allege a wrongful foreclosure claim upon which relief may be granted.

2.  <u>Intentional Infliction of Emotional Distress</u>

Plaintiff next alleges, albeit generally, that PNC's conduct went "beyond the bounds of common decency" and caused him to "suffer emotional distress." [Doc. 1.2, ¶ 34].  To begin, Plaintiff's mere conclusory allegations are "not entitled to the assumption of truth."  <u>Iqbal</u>, 556 U.S. at 679, 129 S. Ct. at 1950.

Additionally, Plaintiff has failed to allege any factual basis to support his claim. Under Georgia law, a plaintiff must show the following elements to establish a claim

of intentional infliction of emotional distress: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." United Parcel Svc. v. Moore, 238 Ga. App. 376, 377, 519 S.E.2d 15, 17 (1999).  In the context of wrongful foreclosure, claims for intentional infliction of emotional distress have been recognized when the conduct was, at the least, reckless, extreme, and outrageous. See e.g., Ingram v. JIK Realty Co., 199 Ga. App. 335, 337, 404 S.E.2d 802, 805 (1991).

Here, as noted above, PNC exercised its contractual right to foreclose on the Property.  While the confusing correspondence from PNC and McCalla could arguably be construed as reckless, Plaintiff fails to allege any conduct by PNC that is either extreme or outrageous. See e.g., Id. (noting that to support a claim of intentional infliction of emotional distress, the defendant's actions must be "so terrifying or insulting as naturally to humiliate").  Moreover, Plaintiff has not alleged a single fact to indicate that PNC's conduct resulted in "severe" distress to Plaintiff, especially when considering that Plaintiff *chose* to violate the terms of his mortgage. Accordingly, Plaintiff's intentional infliction of emotional distress claim fails as a matter of law and is also due to be dismissed.

3.  Fraud and Misrepresentation

Next, in one sentence, Plaintiff's Complaint alleges that PNC caused him "injury" by "misrepresent[ing] material facts regarding the loan modification process" and "induc[ing] him to act."   [Doc. 1.2 ¶ 35].   Plaintiff's allegation, however, fail to "state with particularity the circumstances constituting fraud or mistake" as required under Rule 9(b).   Fed. R. Civ. P. 9(b).   To satisfy Rule 9(b), a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[ ]; and (4) what the defendant[ ] gained by the alleged fraud."   Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (citations omitted).

Here, assuming arguendo that Plaintiff's allegations[4] qualify as "precise" under the first Rule 9(b) requirement, Plaintiff still fails to identify the time, place, or person responsible for the statement.   Plaintiff instead simply alleges that he was told this information but does not allege when, where, or by whom.   Moreover, Plaintiff's Complaint is bereft of any allegation of what PNC gained by making such a statement. See Thomas v. Pentagon Fed. Credit Union, 393 F. App'x 635, 638 (11th Cir. 2010) (mortgagor failed to allege facts with sufficient particularity to state fraud claim

---

[4] Specifically, Plaintiff alleges that he "was instructed that in order to be accepted in the loan modification program, he needed to be behind on his payments" and that he "was led to believe that his mortgage would be modified if he submitted the paperwork and was behind on his mortgage."   [Doc. 1.2, ¶¶ 11, 13].

against mortgagee where he did not identify any specific statements made by mortgagee and failed to identify time and place of omission, person responsible for making omission, and what mortgagee obtained as consequence of fraud). Accordingly, Plaintiff's fraud and misrepresentation claim fails to state a claim upon which relief may be granted and is dismissed.

4. <u>Negligence</u>

In his fourth count, Plaintiff alleges a negligence cause of action arising from PNC's failure to "deal[ ] truthfully" about the amount owed, PNC's instruction to default on his loan, and PNC's failure to provide Plaintiff with proper documents relating to the actual holder of the note and "other important matters." [Doc. 1.2 ¶ 36]. In its Motion, PNC argues that it did not have a duty to Plaintiff imposed by the law.

Georgia law does not recognize a tort-like cause of action for the breach of a duty created by contract. <u>See</u> <u>USF Corp. v. Securitas Sec. Servs. USA, Inc.</u>, 305 Ga. App. 404, 408-09, 699 S.E.2d 554, 558 (Ga. App. 2010). "A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law." <u>Id.</u> (quotation omitted).

Here, Plaintiff does not allege that PNC owed any independently imposed duty to him under law. Instead, PNC's alleged duties appear to extend from the repayment

and servicing obligations of the mortgage and promissory note.  See Phillips v. JPMorgan Chase, No. 1:11-cv-2194, 2012 WL 1004922, at *3 (N.D. Ga. Feb. 27, 2012) (plaintiff's allegation that defendant-bank had duty to evaluate borrowers with reasonable care for loan modification is tantamount to alleging breach of a duty of good faith and fair dealing which is "contractual in nature").

Moreover, courts have long recognized that a "confidential relationship" does not exist between a mortgagee and a mortgagor.  Adams, 2011 WL 2532925, at *5.  In this case, Plaintiff has not alleged any factual circumstance in which PNC and Plaintiff are something other than mortgagee and mortgagor or provided any authority to substantiate his vague allegations that PNC had such a duty.  Accordingly, Plaintiff's negligence claim against PNC is dismissed as a matter of law.

5. Breach of Contract

In his Response Brief, Plaintiff appears to assert a new breach of contract claim against PNC after reading PNC's attached Form 10-K which states, in part, that PNC was "anticipat[ing] new legislative and regulatory initiatives over the next several years."  [Doc. 4-2, p. 3].  In his Brief, Plaintiff alleges that PNC breached its agreement under the Home Affordable Modification Program ("HAMP") and that he is an intended third-party beneficiary to the HAMP agreement.

11

Plaintiff's claim, however, fails for several reasons.  To begin, as a procedural matter, Plaintiff raises this theory for the first time in his Response to PNC's Motion to Dismiss.  This claim was neither asserted in Plaintiff's Complaint nor raised in an amended complaint.  The Court is thus not required to consider Plaintiff's new allegation.

However, even if the Court were to liberally construe Plaintiff's argument as a new claim, Plaintiff's claim still fails on the merits.  District courts have consistently held that HAMP agreements do not make mortgagors intended third-party beneficiaries without an express contractual provision stating otherwise.  See Finch v. Bank of Am., No: 3:12-CV-14(CAR), 2012 WL 1188275, at *1 (dismissing plaintiff's third-party beneficiary breach of contract claim because she had not identified an "express contractual provision" creating such a right); Warren v. Bank of Am., No. 4:11-cv-70, 2011 WL 2116407, at *2-3 (S.D. Ga. May 24, 2011) (holding that "HAMP agreements do not disclose any clear intent to make all mortgagors intended beneficiaries"); Kabir v. Statebridge Co., LLC, No. 7:11-cv-2747-WSD, 2011 WL 4500050, at *8 n.11 (N.D. Ga. Sept. 27, 2011) (holding that HAMP does not vest "mortgagors with third party beneficiary rights to enforce HAMP agreements under Georgia law"); Hall v. Wells Fargo Bank, N.A., No. 7:11-CV-63(HL), 2011 WL 4345190, at *2 (M.D. Ga. Sept. 15, 2011) (noting that there were no express contract provisions

under HAMP that created third-party beneficiary right of action).  Here, Plaintiff has

not indicated any contractual provision that would expressly create a third-party

beneficiary claim under HAMP.  Accordingly, to the extent that Plaintiff asserts a

breach of contract claim against PNC in his response, this claim fails as a matter of law

and is dismissed.

      6.  <u>Equitable Relief</u>

      Plaintiff's final claim against PNC is that he is entitled to a temporary

injunction.  Under Georgia law, "before [a plaintiff] would be entitled to equitable

relief, [he] must do equity and tender the amount due under the security deed and

note."  <u>Sapp v. ABC Credit & Inv. Co.</u>, 243 Ga. 151, 158, 253 S.E.2d 82, 87 (1979);

<u>Morton v. Suntrust Mortg., Inc.</u>, No. 1:10-CV-2594-TWT-RGV, 2010 WL 5055822, at *7

(N.D. Ga. Nov. 5, 2010) ("To seek any relief regarding a pending or past foreclosure

sale, plaintiff must tender the amount owed under the loan.") (internal citation

omitted).

      Here, Plaintiff does not allege in his Complaint that he tendered the amount of

principal and interest owed to PNC prior to bringing suit or that he offered to pay that

amount into the Court's registry.  Although, Plaintiff now offers in his Response to

pay a monthly amount into the court registry during the course of this litigation, such

an offer is not only insufficient but unnecessary.  First, Plaintiff does not offer to tender

the entire amount owed.  Second, the Court concluded above that none of Plaintiff's

claims against PNC state a claim for which relief may be granted and thus he is not

entitled to any equitable relief.  Accordingly, Plaintiff's claim for equitable relief also

fails as a matter of law and is due to be dismissed.

## CONCLUSION

Based on the foregoing, the Court concludes that Plaintiff has failed to state a

claim upon which relief may be granted.  Accordingly, Defendant PNC's Motion to

Dismiss [Doc. 4] is **GRANTED**.[5]

**SO ORDERED,** this  7th day of August, 2012.

<u>S/  C. Ashley Royal</u>
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH/cm

---

[5] Plaintiff also named "All Persons Unknown Who Claim or Might Claim Adversely to Plaintiff's Title to Subject Property" as Defendants in his Complaint (docketed as "John and or Jane Does").  However, in light of the Court's instant ruling, Plaintiff's claims against "John and or Jane Does" must fail as a matter of law and are thus also **DISMISSED**.